Madam Clerk, please call the next case. 1-5706 Salvador Esquinca v. Hope for Hard Transportation Counselor, you may proceed. Thank you. May it please the Court, Counsel? My name is Paul Kogman, and I represent Salvador Esquinca. Well, I'll tell you, the 2-1 majority of the commission here, they're wrong on the facts. They're wrong on the law, and they're wrong on public policy in this area of employee-employer relationship. There have been a lot of recent cases in this area that this panel has dealt with, but I would submit that this case, this isn't even close. This isn't even close. From the day this guy walked in the door and had to fill out an application for employment, and then got up every morning and went to work for these people for years, full-time thereafter, he was, for all intents and purposes, an employee. He was not an independent contractor. This is not somebody that came over to paint my office one day. This would be like me hiring a lawyer full-time to work for me, put the name of my law firm on the side of his car, have me deal with all of the finances for the operation, including deducting for insurance, deducting for tires, deducting for fuel, deducting for everything. Let me just ask you a basic question. Was he compensated the same way as the regular employee drivers of the company? Well, the regular drivers of this company were all independent contractors. Eighty-seven percent of the drivers were, quote-unquote, independent contractors. Wait a minute. Testimony was some of the employees were paid on an hourly basis. Is that not true? He was paid on a 1099 basis. He was not paid on an hourly basis. That's correct. However, as Justice Stewart pointed out in the decision he filed on Monday, that is a very, the city of, I forget the name of the municipality, the case that was just filed on Monday, that has been shown to be of little or no consequence, the mode of payment and whether taxes were taken out. This panel just held on Monday that that's of little or no consequence in deciding whether or not there was an employee-employee relationship. And in fact, Justice Stewart, in that opinion, reminded us that the most important thing is whether or not the activity was in the main business of the employer. And here, it's a trucking company. He's a truck driver. Yeah. So the, clearly, clearly he's within their main business. And the commission's decision, ordinarily, you could rely upon certain factual findings of the commission. But if you look at this decision, this decision is not an accurate statement of the facts. This decision is spent, for example, Wait a second. Let him ask the question, okay? Okay. What recent decisions, there's been a series of decisions in the last few months, as you know, on this topic, holding the commission's determination. So what recent cases can you point to that say, this case is weird on steroids. This is a, and where they reverse the commission's determination, this case has a much better set of facts than where. In fact, to affirm this case, you're reversing where, if this case is affirmed. Counsel, I just, it seems that in cases involving a determination of employee versus independent contractor, lip service is paid to the standard of review, which is manifest weight. There are all of these factors that the courts have identified in making that determination as to whether or not it's employment, whether or not it's an independent contractor basis. But when it gets to actually arguing the issues, it seems like everybody morphs into using a de novo standard. The commission's determination isn't given any weight. Would you acknowledge that we have to look at this from a manifest weight standpoint? Part of the reason the court. But just on that issue. Do you acknowledge this is a manifest weight? Not if the facts are undisputed. Not if the facts are undisputed. And then the court can apply the undisputed facts to the law. So that's why in a situation like this, where it's 90% of the facts there are totally undisputed. But it's not just whether or not the facts are undisputed, it's whether or not there is a single inference to be drawn from those facts. And so with all of these factors to be applied and all of the facts involved in this case, are you saying there's but one inference that can be drawn by the commission? I'm saying that under these facts, an opposite conclusion, number one, is apparent. Okay, so manifest weight. We have that. Number two, to the extent that there are findings that the commission has, there are undisputed facts which would support reversal. And in addition to that, since we have a legal argument that this company did not meet the prerequisites, did not follow justice Holdridge in his recent dissent in the steel and machinery case, wrote, a trucking company cannot choose to disregard or negotiate its way around the requirements of federal law. Well, guess what? He spoke too soon. He underestimated the willingness of some of these fly-by-night trucking companies to flop the law and not get the appropriate insurance or look for a way out. This company had no driver agreement in place on the date of this accident. It had expired nine months before this accident. Counselor, I would be willing to bet you that when your opponent gets up here, she's going to tell us that this employer had no ability to control the means or method by which this man worked They never told him what route to drive. They told him where to pick it up and where to leave it. And then they never told him that he had to take or accept all of the jobs that were offered to him. He supplied his own truck. He was responsible for fixing his own truck. I can go through the laundry list. Now, once you have elements in support of the notion that he's an employee and also elements in support of the notion that he is an independent contractor, it occurs to me that the inference to be drawn belongs to the Commission, not to us. Well, that's not the case here. He testified that he couldn't pull for anybody else. Number one, whether or not hypothetically he could, I would submit it's secondary to whether or not he did. And how many years did he get up and work full-time for this establishment 8 hours, 10 hours, 12 hours a day? How many years do we have to have before we finally acknowledge, yeah, you know what, this wasn't hired for a task. This was hired to work that job for multiple tasks over and over and over again. Excuse me. No one's suggesting the Commission could not have drawn the inference you suggest. Manifest Weight doesn't have a right answer. It could be either or. As long as there is evidence in the records to support the decision the Commission made, then we're obligated to affirm it. It's not what this Court said anywhere. And where this Court looked at a situation identical to this situation, and this panel held that this company controlling him and treating him like an employee, making him wear their safety vest the entire time he was working, putting their placard on the side of his truck, using their trailer, and by the way, in where, where the claimant wasn't using the employer's trailer. Here he was using their trailer. This is a way, and in where the company followed federal law which would allow for somebody to be an independent contractor by having the contract in place, this company, they felt their nose at that. And in where, what did the Commission determine? I'm sorry? In where, what did the Commission determine? They determined, they determined he was an independent contractor, and this panel reversed that determination in where. So this, this is a ten times better... Who owned the truck in this case? He owned the, he owned the tractor, they owned the trailer. Okay, so he owned the tractor, right? He owned the tractor, and again, 90% of their drivers, 87% of their drivers were quote-unquote independent contractors. So this court needs to look at this new problem we have in the state called misclassification of drivers. Is this a misclassification? This panel hasn't dealt with this before. And I would submit to you... He had a statute covering that for construction workers. Exactly. It sets out clear guidelines and so forth. Exactly, and I would submit to you that one of the indicia of misclassification is when the average employee is a quote-unquote independent contractor. A super majority, 90% of the truck drivers at a trucking company, in this case, are independent contractors. Doesn't that cause pause for anybody here? I mean, if that's not misclassification, you tell me what is. 90% of the drivers are quote-unquote independent contractors. He had all, followed all the same rules. He had group safety meetings. They did the DOT physical. Where did he go after the accident? To their clinic where they directed him. To their clinic after the accident. And I'm supposed to stand here and believe that this guy is running his own company? Did he get any benefits? Did they provide him with any medical or health insurance? It's interesting you should bring that up too because I was going to touch on that. They handed him a form. They attempted to solicit a waiver of his coverage under the workers' compact. We're not talking about workers' coverage. I'm asking the questions this morning. Did they provide him with any medical, dental, or health benefits? Yes or no? Very simple question. It's not open to a yes or no answer because here's what happened. They took money out of his check, which he paid for, for an owner-of-the-stock policy. He thought he was buying workers' stock because of what he testified to. He found out after the accident it was the subsidy. Did they provide him with health insurance? They took money out of his paycheck. The answer is he paid for the coverage. The company did not pay for it. They did provide him with benefits. They paid for a dime of it. Fine. You answered the question. Does that weigh in favor of an employee relationship? Absolutely. This company should be stopped from arguing there was no workers' comp coverage simply because they enticed him to believe that he was covered under the Act. And then Section 24, Section 23 also holds that you cannot solicit a waiver under the Act. Excuse me. Did you ever make a Section 23 argument before the Commission? Did it be a yes or a no? I don't think I specifically raised that, Justice Altman. Excuse me. If you didn't raise it before the Commission, you can't raise it before us. Well, my position would be that it's just an additional argument as to the only issue, the additional argument that would fall under that heading. Well, an additional argument is not good enough. If you didn't raise the Section 23 violation before the Commission, you waive it before us. Or you forfeit it. Let's put it that way. The other thing is if you look, as I pointed out in my brief, if you look at these findings, as I think, unfortunately, I think the problem that the arbitrators disagree with me, I think that they improperly relied upon the arbitrators' findings of fact, which are so misleading in this case. For example, they point out that he operated, this was his own truck, he never pointed out or conceded or mentioned that the trailer was the respondent's property. They said that the employer took out for taxes. They didn't point out that they also took out for tires. They took out for fuel. He had to wear their safety vest. They said he didn't have to wear a uniform. They never mentioned the fact that he had to wear their insignia on a safety vest, and he was fined $75 if at any time during the workday he took the vest off. He had stickers on the side of his truck, which if he peeled it off, there was no way for anybody else, you're fired. So this is not an independent driver by any stretch of the imagination here. If there ever was a case where an opposite conclusion was readily apparent, this would be that case, just like it was in Ware. And in addition... Who was Malden? He was the owner of the company. And pretty much on every one of those points, he had a different testimony. You know, you've got to love Mr. Malden. Page 226, I want to make sure to cover this. Mr. Malden, I asked him, you know, your drivers have to have a written lease agreement, don't they? Here's his answer. This is 226 of the record. I asked him, they can't work without a written lease agreement. Here's his answer. That's for suckers. That's for other trucking companies. You know, my lawyer says, tee hee hee, aren't I smart? I know how to get around. I'm smarter than lawyers, I'm smarter than the commission, I'm smarter than Judge Aisle, smarter than the commission, I won this case. That's who you're dealing with here. That's not a real sympathetic guy to me. That's not somebody we should be protecting. I can see where a company, you know, that's fine, I have no problem with that. But when you have guys like this that prey on people who are owner operators so they can avoid worker's comp, they can avoid Affordable Care Act coverage, they can avoid unemployment, they can avoid all those taxes just by using a couple of magical forms that they get off the internet, that offends me. That's not a contract in place here and the commission gave effect to an illegal employment contract or simply based on the fact that an opposite conclusion is readily apparent here, particularly in light of the additional decision that was filed on Monday, which again reminded us that the important thing is whether or not the activity is in the main business activity of the employer responding, which is exactly what we have here. Thank you. Thank you. Counsel, you may respond. Good morning. May it please the court, Courtney Quilter on behalf of the Appellee Romar Transportation. The issue before the court this morning is whether Mr. Escuenco was an independent contractor or employee under the Illinois Workers Compensation Act. It was stated in the commission that he was an independent contractor against the manifest way of the evidence. We don't decide whether he was or wasn't. We just decide whether there's evidence in the record to support their conclusion that he wasn't. Go ahead. I'm sorry. The court in Roberson discussed the two main cases on the issue of the manifest way of the evidence. Mr. Escuenco's argument thus reduces to simply this. The commission relied on where when it should have followed early. Mr. Escuenco's argument in the present case is similar to the argument made in Roberson. However, his argument reduces to the commission relied on early when it should have relied on where. The court in Roberson went on to state that exactly what the commission did in this case when it found Mr. Escuenco was an independent contractor. Unless the court would like for me to go into detail regarding each of the factors considered, I will rely on my brief which discusses each factor in detail. Counsel, I'm curious about something and it may or may not be in the record. So if it's outside the record, I'm not asking you to look at the record.   was any evidence in the record that Mr. Escuenco's client had drivers who were independent contractors. Is there evidence in the record as to why there was this dichotomy between  independent contractor truck drivers? No, I don't believe there was anything in the record about that, as I recall. I'm not sure. I don't think there was any testimony about it, though. They just had the two types of drivers. But more to the point, in this case, in this case fairly turns in it, weren't they treated differently than the claimant in this case? Yes, they were. And can you point out what those differences were that would justify him being an independent contractor instead of an employee? Sure. The owner-operator drivers were required to sign an agreement, which Mr. Escuenco did in this case, and Mr. Martin testified that the owner-operator drivers were not required to. The owner-operators received 70 to 75 percent per shipment, and some of their employee drivers did receive a percentage per shipment, but they received only 30 to 35 percent. So he actually, in terms of income, he actually benefited by being classified as an independent contractor in terms of financial   He got a larger percentage. Okay. Go ahead. Well, he had to pay expenses, though. He did. He had to pay expenses. He had to pay expenses. Okay. And is there anything in the record about how the employees versus independent contractors came out in the end as far as what they netted? There was nothing in the record about that, but We don't know who made more money, the employees or the independent contractors, right? We don't know, no. Great. Just some other     The employees did. Owner-operators were not offered tax deductions. The owner-operators did not have taxes deducted. The employees did. Owner-operators were not offered health benefits such as medical, dental, short-term, long-term disability. The employees were. They received a 1099, no 1099 for the employees. The owner-operators were told when and where to make deliveries. That was the only instruction they were given.   work if they wanted to. The employees were given specific moves and they didn't have the option of turning down work. So the employees were told when and where to make However, the independent contractor directed what routes to take or was he able to decide how to get to where he was going? He chose how he was going to get. They did not dictate. They did not control his routes? No, they did not. They only told him when and where to pick up and everything else was his responsibility. There are some points that your closing counsel has focused fairly repeatedly on. One is the agreement being expired. Could you address that? Sure. Well, regarding the expiration of the agreement, counsel is relying on the Federal Motor Carrier Safety Act and basically his argument is that the parties must comply with that statute before Mr. Esquinka may be considered an  contractor under the Illinois Workers Compensation Act. But there's no indication in this statute that he's relying on that a classification as an independent contractor or an employee under the Federal Statute should have any bearing on Mr. Esquinka's classification under the Illinois Workers Compensation Act. So the fact he might be an independent contractor under one statute but not another, I would submit is of no legal consequence in this case. So we're left again with the factors set forth by the courts for determining Mr. Esquinka's status under the Illinois Workers Compensation Act. And I would submit that this is not a requirement of the contract. Is there a penalty? I didn't see one in the statute. I'm not completely sure, but I did not see one in the portion of the statute that was cited in counsel's brief. So for purposes of the Illinois Workers Compensation Act, can you be an independent contractor even though you don't have an agreement? I would submit yes, based on all the other factors. Right. What about the argument about waiver of workers' coverage? Well, first of all, Section 23 applies to employees only, and Mr. Esquinka was not found to be an employee in this case. Regarding the waiver, there was a provision that indicated Mr. Esquinka was electing not to be covered under the Illinois Workers Compensation Act. He didn't check that box. I believe Mr. Esquinka's argument is that when the commission found him to be an independent contractor, they found that he was not  independent contractor. They simply found that he was an independent contractor. Thank you. Overall, there is ample evidence in the record to support the commission's decision that Mr. Esquinka was an independent contractor. The commission did its job in this case and weighed the evidence against the factors established by the courts and found Mr. Esquinka was an independent contractor, which it was well within its province to do. We therefore respectfully request you affirm the decision of the circuit court, which upheld the decision of the commission. Thank you for your time. Counsel, you have five minutes in reply. That was a great question. You asked her the difference between the employees. The three of them dealt with payment, which this court has held was not an important factor. The other one is that they had a contract, which they had to sign. And in the entire time he worked there, how many other roles did he ever pull for anybody else? Who's saying? Big zero. The other thing is she said, oh, well, yeah, just because the federal law says in order to be an independent contractor, you have to have an agreement. But there's nothing in Illinois law that says that. That's wrong. In addition to the federal law, in my brief, you'll see I also cite Illinois law. Illinois has the Motor Transportation Act, Illinois also has a similar agreement, also requires that. Plus, the federal government has preempted this area. I have a commercial pilot license. If I only had a private pilot license, I couldn't hire or fly anybody or fly any goods for hire if I only had a private license. And nobody could sue me anywhere in any court in the state of Illinois if they breached payment. They could say, oh, Mr. President,  hire or fly. There's no question about that. The federal government sets the standards and they define who is a commercial driver, who's a private pilot, who's a commercial pilot, and if you're not properly licensed, you can't have a contract for employment. He can be an employee without a written agreement, but that's what we have here. We have an at-will employment agreement by default because under federal law, it's quite clear, it says in order to be an independent contractor, you must have a valid lease agreement. And why is that? Well, we saw that with the Willis case, when the family got run over by the big truck, these little trucking companies, it's important that they follow the law, they have insurance coverage, and that somebody doesn't, you know, have somebody out pulling for somebody else with no coverage, no workers' comp, our families are on these roads. That's why there's an important government projection in this area. We have to make sure that we have an independent contractor unless you meet the requirements of federal law. It was not done. This is an illegal contract. By default, this gentleman, barring all the factual issues, is an employee, not an independent contractor. Thank you. Thank you, counsel. Thank you, counsel, both for your arguments in this matter  your testimony this morning. He will be taken under advisement and          this morning. He will be taken under advisement, and his position shall issue. And I'm quite confident of his ability to be an independent                 Thank you, thank you. Thank you. Thank you very much. Thank you, thank you. Thank you. thank you, thank you. Thank you very